## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

JULIE ESTHER AYAAD and
OSAMA HASSAN AYAAD,

      Debtors.

Case No. 23-13723 KHT
Chapter 7

---

### ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL

THIS MATTER comes before the Court on (1) the Emergency Motion for Reconsideration and to Vacate Order Approving Settlement (the "Motion for Reconsideration," Docket #294), and (2) the Motion to Stay Pending Appeal (the "Motion for Stay," Docket #296), both filed by Debtor Osama Hassan Ayaad ("Mr. Ayaad"). The Court, having reviewed the pleadings and the file, and being fully advised in the premises, hereby finds and concludes as follows:

### I.     FACTUAL AND PROCEDURAL HISTORY[1]

Mr. Ayaad and Safwan Almomani ("Mr. Almomani") decided to go into the restaurant business together. In February 2011, Mr. Ayaad's then-wife, Julie Ayaad ("Ms. Ayaad") filed the documentation with the Colorado Secretary of State to form Sahara Café LLC (the "LLC"), which owned and operated the Saraha Café (the "Restaurant"). The Restaurant operated in leased space located at 954 Manitou Avenue, Manitou Springs, Colorado (the "Property"). Mr. Ayaad managed the Restaurant's daily operations.

Initially, the Property was owned by a third party, but in 2012, Mr. Almomani and his wife, Jane Murphy ("Ms. Murphy," and together, "Creditors") purchased the Property. Mr. Ayaad and Ms. Ayaad (together, "Debtors") assert they contributed to the purchase price and were entitled to an interest in the building, based on a contract between the two couples (the "Property Contract").

Disputes subsequently arose between the couples, and in October 2020, Mr. Almomani filed a lawsuit against Debtors in the El Paso County, Colorado District Court (the "State Court").[2] Debtors filed counterclaims, including a claim for relief based on the Property Contract.

---

[1] The following facts are undisputed, unless otherwise indicated.

[2] Relevant pleadings from the State Court's docket are attached hereto as Exhibit A. There is no dispute as to the authenticity of the copies of the attached pleadings, which were submitted to this Court in support of Creditors' Motion for Summary Judgment.

ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL
Case No. 23-13723 KHT

On February 23, 2021, the State Court entered an Injunction (the "State Court Injunction"), which provided, in part, as follows:

1.   Defendants Osama Ayaad and Julie Ayaad are enjoined from entering the Business Premises or removing any property from the Business Premises.

2.   Defendants Osama Ayaad and Julie Ayaad are enjoined from spending managing, removing, dissipating, hiding, or otherwise disposing of any funds or property held by either The Sahara Mediterranean Café LLC or Sahara Café LLC. and [Plaintiffs] are directed to work with the stipulated neutral accountant and manage Sahara Café, LLC. or in the alternative the restaurant presently operated at 954 Manitou Avenue, Manitou Springs, Colorado 80829 (the "Business Premises") shall cease operations at the close of the business day on which this Order enters.

State Court Injunction at 2-3.

The Restaurant did not close. During the pendency of the State Court lawsuit, and continuing thereafter, Mr. Almomani managed the Restaurant's daily operations.

In August 2022, following a jury trial, the State Court entered Judgment in favor of Creditors and against Debtors, jointly and severally, in the amount of $200,000 for breach of fiduciary duty, fraud and deceit, and civil conspiracy, and in the amount of $750,000 for civil theft, for a total damage award of $950,000, plus attorney's fees and costs of $184,193.99, plus post-judgment interest. The State Court also entered judgment against Debtors on their counterclaims, including the claim based on the Property Contract. After an appeal was dismissed, the Creditors asked the State Court to dissolve the LLC and divide its property. Before the State Court could decide that issue, Debtors filed their bankruptcy petition on August 21, 2023, under Chapter 11, subchapter V. Joli Lofstedt ("Trustee") was appointed Subchapter V Trustee.

During the pendency of their Chapter 11 case, Debtors, represented by experienced and competent bankruptcy counsel, pursued attempts to reorganize their affairs and resolve their disputes with Creditors. They proposed a plan of reorganization and proposed amendments to the plan, but Creditors pursued objections to each plan and amendment (Docket ##81, 97, 117, 120, 123, 157, 165, 180).

Meanwhile, Mr. Almomani continued to manage the Restaurant's daily operations, contrary to his expressed wishes to focus on other business and personal activities and to wind up the LLC (Docket ##47, 101). The Restaurant did not pay rent. Two notices of *lis pendens* clouded Creditors' title to the Property. Creditors were stayed from any actions to collect their over $1.25 million judgment against Debtors, while interest continued to accrue and their attorney's fees continued to increase.

In January 2025, Debtors filed a motion to convert their case to one under Chapter 7, citing the need to forestall additional administrative expenses (by that time, Debtors' counsel had had performed over $84,000 worth of work on Debtors' case, as set forth on fee applications at Docket ##124, 182), and stating: "Given the status of, and costs pertaining to, the litigation between the Debtors and Mr. Almomani and Ms. Murphy, the Debtors have determined that further reorganization efforts would not be in the Debtors' best interest nor the interest of the creditors in this case." (Docket #184). The Court converted Debtors' case to one under Chapter 7 by Order entered February 6, 2025 (Docket #192). Trustee was appointed Chapter 7 Trustee (Docket #193).

In June 2025, Mr. Ayaad, proceeding pro se,[3] filed a motion to dismiss Debtors' bankruptcy case (Docket #235). Ms. Ayaad, also proceeding pro se, filed an objection to dismissal (Docket #240), stating Debtors' decision to convert to Chapter 7 was made willingly after being fully advised by counsel. Trustee and Creditors also objected to dismissal of Debtors' case (Docket ##242, 243). The Court set the motion to dismiss for preliminary hearing to be held July 16, 2025 (Docket #261). At that hearing, for the reasons stated on the record, the Court denied Mr. Ayaad's motion to dismiss (Docket #269). Mr. Ayaad filed a Motion to Reconsider (Docket #271), which the Court also denied (Docket #286).

Also in June 2025, Creditors filed a Motion to Compel Trustee to Abandon Property of the Estate, specifically any of Debtors' interest in the Property and the LLC, under § 554(b) (the "Motion to Abandon," Docket #237). As to the Property, Creditors contended Debtors had no interest in it, given the jury verdict and judgment entered by the State Court. As to the LLC, Creditors contended Debtors were not entitled to any distributions, given that the LLC's debts, including unpaid rent of over $102,000 and the LLC's liability to Mr. Almomani, exceed the LLC's assets, estimated to be worth $120,000. Mr. Ayaad filed an Objection to the Motion to Abandon (Docket #245), agreeing as to the amount of unpaid rent but disagreeing as to the value of the LLC and the extent of Debtors' interest in the Property. Mr. Ayaad asked that Trustee be given an opportunity to assess the value of the LLC and the estate's interest in the Property. Trustee obtained multiple extensions of time to respond to the Motion to Abandon.

While the Motion to Abandon was pending, Trustee and Creditors reached a Settlement Agreement resolving the Motion to Abandon and other pending matters, including the estate's counterclaims asserted in adversary proceeding 23-01233 KHT (the "Adversary Proceeding") and the sale of rental property located at 1443 Acacia Drive, Colorado Springs, CO 80907 (the "Rental Property"). The Settlement Agreement provided, in part, as follows:

- Creditors will pay Trustee $20,000 in full satisfaction of the Adversary Proceeding counterclaims, the motion for dissolution pending in the State Court Case, and the two notices of *lis pendens* filed against the Property. Following the payment, the parties will dismiss the motion for dissolution, close the State Court lawsuit, and dismiss the Adversary Proceeding

---

[3] Debtors' counsel was allowed to withdraw by Order entered June 2, 2025 (Docket #233).

counterclaims. Debtors will retain the right to assert the counterclaims as defenses in the Adversary Proceeding.

- Creditors' proof of claim will be allowed in its entirety.

- Trustee will assign to Creditors the estate's membership interest in the LLC.

- Trustee will release the *lis pendens* against the Property.

- The estate will list and market the Rental Property and will receive $20,000 from the net sale proceeds, with the remaining net proceeds paid to Creditors.

On July 10, 2025, Trustee filed a Motion to Approve Settlement Agreement (Docket #264). Mr. Ayaad filed an objection (Docket #272) and also filed multiple pleadings alleging errors in the proceedings before the State Court and asking for relief from the State Court's judgment. Creditors filed a motion to strike Mr. Ayaad's objection for lack of standing (Docket #273). Out of an abundance of caution, the Court denied the motion to strike by Order entered September 11, 2025 (Docket #286), given the pendency of claims of nondischargeability in the Adversary Proceeding.

On October 8, 2025, the Court held a preliminary hearing on the Trustee's Motion to Approve Settlement Agreement. Mr. Ayaad appeared and presented argument to the Court. For the reasons stated on the record, the Court approved the Settlement Agreement (Docket ##290, 291).

On October 17, 2025, Mr. Ayaad filed (1) his Motion for Reconsideration (Docket #294), (2) a Notice of Appeal (Docket #295), and (3) his Motion for Stay (Docket #296). Given the pendency of the Motion for Reconsideration, the Notice of Appeal is premature. *See* Fed. R. Bankr. P. 8002(b)(2). The Court will nevertheless address both the Motion for Reconsideration and the Motion for Stay, to expedite the matters under review.

## II.   MOTION FOR RECONSIDERATION

In determining the Motion for Reconsideration, the Court is guided by the following holding of the Tenth Circuit Court of Appeals:

[A] motion for reconsideration and a successive Rule 60(b) motion, as brought by [Movant] in this case, are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. Absent extraordinary circumstances, not present here, the basis for the second motion must not have been available at the time the first motion was filed. Moreover, a motion to reconsider filed within ten days after entry of judgment is considered a Fed. R. Civ. P. 59(e) motion. *See Van Skiver*, 952 F.2d at 1243 (10th Cir.1991). Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law,

> (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *See Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.1995). Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Cf.* Fed. R. App. P. 40(a)(2) (grounds for rehearing). It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing. *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991).

*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Here, the Court cannot find it misapprehended the facts, Mr. Ayaad's position, or the controlling law.

## A.    The Facts.

The Court's decision to approve a settlement must be "an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir. 1989). Mr. Ayaad asserts this Court was required to conduct an evidentiary hearing before approving the Settlement. The Court disagrees. Debtors' case has been pending before this Court more than two years, during which time the Court has reviewed many pleadings,[4] held multiple hearings, and decided procedural and substantive issues. The Court has become very familiar with the parties and their positions, as has the Trustee. The facts before the Court are developed, and the salient facts are undisputed.

The State Court entered Judgment in favor of Creditors and against Debtors, jointly and severally, in the amount of $200,000 for breach of fiduciary duty, fraud and deceit, and civil conspiracy, and in the amount of $750,000 for civil theft, for a total damage award of $950,000, plus attorney's fees and costs of $184,193.99, plus post-judgment interest. The State Court also entered judgment against Debtors on their counterclaims, including the claim based on the Property Contract. The State Court's Judgment is final and binding on the parties and this Court. As discussed further below, the State Court Judgment controls the questions of Debtors' interests in the Property and Creditors' right to a judgment. Mr. Ayaad cannot relitigate those matters in this Court by alleging "red herring" factual or legal questions or disputes.

"[T]he Court is not required to conduct a mini-trial on the issues upon which the settlement is predicated, nor does it need to decide all of the legal or factual questions raised by the parties." *In re Brutsche*, 500 B.R. 62, 71 (Bankr. D.N.M. 2013) (quoting *In re Servisense.com, Inc.*, 382 F.3d 68, 71-72 (1st Cir. 2004) ("[T]he responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.")). As discussed further below, the Court considered the undisputed facts and the applicable law to determine Mr. Ayaad's objection to the settlement must be overruled, and the Settlement should be approved.

---

[4] As of the date of this Order, the Court's docket in this case includes at least 300 entries, and the Court's docket in the adversary proceeding includes over 60 entries.

ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL
Case No. 23-13723 KHT

### B.    Mr. Ayaad's Position.

The Court summarizes Mr. Ayaad's arguments as follows: (1) Debtors are entitled to an interest in the Property, under the Property Contract or otherwise; (2) Debtors are entitled to a distribution from the LLC, based on Ms. Ayaad's membership interest; (3) the Rental Property should not be sold; and (4) he has been treated inequitably by Creditors, the State Court, and/or Trustee. The Court will discuss each below.

### 1.    Debtors' interest in the Property.

Turning first to Mr. Ayaad's argument Debtors' estate includes a valuable interest in the Property, the Court cannot so find, as a matter of law. The State Court entered judgment against Debtors on their counterclaims, including the claim based on the Property Contract. Mr. Ayaad argues the State Court committed errors or failed to consider available evidence, but under the *Rooker-Feldman* doctrine, this Court cannot act as an appellate court to the State Court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. Of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

This Court is bound by the full faith and credit statute, 28 U.S.C. § 1738, to give preclusive effect to state court judgments, according to the law of the state in which the judgment was rendered. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Applicable Colorado law provides as follows:

> Res judicata . . . refers to 'claim preclusion.' The doctrine holds that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. It bars relitigation not only of all issues actually decided, but of all issues that might have been decided. It requires an identity of parties or their privies (Restatement, Judgments §§ 83-92 (1942)), as it would be unfair to preclude a party from litigating an issue merely because he could have litigated it against a different party.

> Collateral estoppel, on the other hand, refers to 'issue preclusion.' The doctrine holds that the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit. Collateral estoppel is broader than res judicata in that it applies to a cause of action different from that involved in the original controversy. It is narrower, however, in that it does not apply to matters which could have been litigated but were not.

*Pomeroy v. Waitkus*, 517 P.2d 396, 399 (Colo. 1973) (citations omitted).

Here, to the extent Mr. Ayaad argues the Property Contract is enforceable, based on an equitable theory he asserted or could have asserted in the State Court, that argument is precluded by the doctrine of res judicata, or claim preclusion. To the extent Mr. Ayaad argues Creditors breached the Property Contract, that argument is precluded by the doctrine of collateral estoppel, or issue preclusion. This Court must give effect to

the State Court's Judgment against Debtors on their claims under the Property Contract. Therefore, the Court cannot accept Mr. Ayaad's argument the Settlement Agreement should not be approved because it fails to account for the value of the Property or because it includes a release of the notices of *lis pendens*.

### 2.    Distribution from the LLC.

Turning to the argument Debtors are entitled to a distribution from the LLC, based on Ms. Ayaad's membership interest,[5] the Court cannot agree, based on the undisputed facts before it.

An LLC cannot make a distribution to its members without first paying its creditors. Here, the parties agree the LLC has not paid rent in years, and the amount owed exceeds $100,000. Mr. Ayaad has not offered any evidence the LLC's assets are worth more than $120,000, much less the amount of Creditors' judgment, which exceeds $1.25 million. The Court cannot find the LLC has a positive liquidation value that would result in a distribution to Ms. Ayaad.

Mr. Ayaad seems to argue the Court should consider the value of the Restaurant as a going concern. He argues Mr. Almomani is not managing it as profitably as he could. But, the State Court prohibited Mr. Ayaad from operating it, and Mr. Almomani has repeatedly requested to stop operating it. In their Chapter 11 case, Debtors attempted to reorganize. Had they succeeded in confirming a Chapter 11 plan, it may have been possible to continue the Restaurant's operations. But Debtors did not succeed in confirming a Chapter 11 plan. They are now proceeding in Chapter 7. Their businesses cannot be reorganized, and their assets must be sold. Even if Mr. Ayaad had presented probative evidence of the Restaurant's value as a going concern (which he has not), such evidence would be inapplicable here.

Considering the undisputed facts before it, the Court cannot accept Mr. Ayaad's argument the Settlement Agreement should not be approved because it fails to account for a distribution from the LLC, based on Ms. Ayaad's membership interest.

### 3.    The Rental Property.

Turning to the argument the Rental Property should not be sold, the Court cannot agree, as a matter of law.

Trustee is the representative of Debtors' Chapter 7 estate, *see* 11 U.S.C. § 323(a),[6] tasked with the responsibility to collect and reduce to money the property of the estate, *see* § 704. Any party in possession of property of the Chapter 7 estate is required to turn

---

[5] It is not clear Mr. Ayaad has standing to assert the rights of Ms. Ayaad, who is the LLC's member and who did not object to the Settlement Agreement. But, in an abundance of caution, the Court has considered his argument.

[6] Further references to "section" are to those of the Bankruptcy Code, 11 U.S.C., unless otherwise indicated.

it over to Trustee, *see* § 542, and Trustee has the right to use or sell the property, *see* § 363. Debtors no longer have the right to exercise control over property of their Chapter 7 estate. *See, e.g., In re Cook*, No. BAP NM-11-082, 2012 WL 1356490, at *8-9 (10th Cir. BAP Apr. 19, 2012), *aff'd*, 520 F. App'x 697 (10th Cir. 2013). As the Bankruptcy Appellate Panel explained:

> "A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured." Section 704, which prescribes the duties of a Chapter 7 trustee, directs a trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." To make this possible, § 363 authorizes a trustee, after notice and a hearing, to sell property of the estate "other than in the ordinary course of business." The purpose of liquidating the estate's assets is so that the proceeds may be distributed to the debtor's creditors.

*In re Bird*, 577 B.R. 365, 375 (10th Cir. BAP 2017) (footnotes omitted).

When a trustee determines a bankruptcy estate has sufficient assets to administer, the trustee must liquidate the estate's assets and distribute the proceeds to creditors according to the priorities set forth in the Bankruptcy Code. Only if all creditors are paid in full, with interest, are any funds distributed to a Chapter 7 debtor. *See* § 726(a)(1)-(6). Only if a bankruptcy estate is solvent does a Chapter 7 trustee owe duties to the debtor. *See In re Halvorson*, 607 B.R. 680, 685 (Bankr. C.D. Cal. 2019).

As part of the Settlement Agreement, Trustee seeks to sell the Rental Property. According to Debtors' schedules, prepared with the assistance of counsel and signed under penalty of perjury, the Rental Property is worth $400,000 and is subject to a mortgage held by Pennymac Loan Services in the amount of $227,975.50. Any value remaining after satisfaction of the mortgage would be subject to the Creditors' judgment, which currently exceeds $1.25 million, as they have recorded a lien. Without a satisfaction of the Creditors' judgment, the sale of the Rental Property would not result in any net sale proceeds being distributed to the estate. Under the Settlement Agreement, the estate will receive $20,000 in sale proceeds.

Mr. Ayaad argues the Rental Property is not ready to be sold. He has not offered evidence of specific repairs or improvements needed, the cost of any work needed, or a timeframe within which the work could be done. But, even if he had, the decision of whether and when to sell the Rental Property is that of the Trustee, and the decision to sell now, rather than wait for the completion of unspecified repairs or improvements, falls well within her business judgment.

The specifics of the sale, such as timing and purchase price, will be brought before the Court upon the filing of an appropriate motion, and the Court will consider them at that time. At this time, the only question before the Court is whether to "carve out" an amount of the sales proceeds from the distribution Creditors would otherwise receive based on

ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL
Case No. 23-13723 KHT

their judgment lien. Considering the undisputed facts before the Court, including the value of the Rental Property and the amount of liens against it, the Court cannot find $20,000 of sales proceeds falls below the lowest point in the range of reasonableness.

### 4. Equitable Concerns.

Mr. Ayaad argues the Creditors acted improperly in their dealings with Debtors, and the State Court failed to consider all relevant evidence. As discussed above, this Court cannot act as an appellate court of the State Court. The State Court Judgment is binding on the parties and this Court.

Mr. Ayaad further argues he did not receive adequate notice of the Settlement Agreement or a meaningful opportunity to be heard on it. The Court cannot agree. The Settlement Agreement was filed with the Court (Docket #264), and the Motion to Approve it, along with a Local Rule 9013-1.1 Notice providing an opportunity to object (Docket #265), were served on both Debtors at their designated addresses (Docket #266). Mr. Ayaad received notice of the Settlement Agreement. He had the opportunity to object to it, and he did object to it, through multiple pleadings filed with this Court. Even though it is not clear Mr. Ayaad has standing to object to the Settlement Agreement, because it is not clear Debtors' bankruptcy estate is solvent, out of an abundance of caution, the Court allowed Mr. Ayaad to appear before the Court and present his arguments. The Court considered Mr. Ayaad's objections but did not find any genuine issues of material fact necessitating an evidentiary hearing, nor did it find Mr. Ayaad's objections required denial of the Settlement Agreement as a matter of law. Mr. Ayaad has been provided with sufficient notice and opportunity to be heard.

Mr. Ayaad appears to argue he should have been included in the settlement discussions or negotiations. That is not correct. As discussed above, Trustee is the representative of Debtors' bankruptcy estate. Debtors' role is limited to presenting objections to matters as to which they have standing to object.

Mr. Ayaad argues he has been unable to retain counsel. The Court is not without sympathy for a party proceeding *pro se* in a complicated bankruptcy case. But, bankruptcy is a civil matter to which any constitutional right to counsel does not apply. *See, e.g., In re Flowers*, 83 B.R. 953, 954 (Bankr. N.D. Ohio 1988). Mr. Ayaad's inability to retain counsel does not require this Court to delay or deny approval of the Settlement Agreement.

Finally, Mr. Ayaad argues Trustee is biased against him. He has provided no evidence of bias or any improper conduct. The proceedings before this Court do not support a conclusion Trustee has acted in any manner other than that required by the Bankruptcy Code, applicable rules of Bankruptcy Procedure, and other applicable rules of conduct.

The Court cannot find any equitable ground supporting reconsideration of this Court's approval of the Settlement Agreement.

ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL
Case No. 23-13723 KHT

## C.    Controlling Law.

When approving the Settlement Agreement, the Court considered the following applicable law:

> Rule 9019 allows the Trustee, with court approval after notice and hearing, to compromise or settle claims of the estate, including a cause of action a debtor has against a third party. Further, settlements are favored in bankruptcy. Appellate courts have held that a bankruptcy court's approval of a compromise must be affirmed unless the court's determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Rule 9019 does not set out approval factors for a compromise, rather, the standards for consideration of compromise and settlement are left to case law. The underlying test for the bankruptcy court's approval is whether the Trustee's actions are "within the universe of reasonable actions", not whether pressing onward might produce more funds. The Court's role is to determine if compromise and settlement is in best interest of creditors. Further, the Court must apprise itself of "all facts necessary for an intelligent and objective opinion of probabilities of ultimate success should the claim be litigated." In considering whether a settlement or compromise is in the best interest of the estate, the court must consider four prongs:
>
> > (1)    The probable success of the underlying litigation on the merits,
> >
> > (2)    The possible difficulty in collection of a judgment,
> >
> > (3)    The complexity and expense of the litigation, and
> >
> > (4)    The interests of creditors in deference to their reasonable views.

*In re Dennett*, 449 B.R. 139, 144-45 (Bankr. D. Utah 2011) (footnotes omitted), *cited by Kearney v. Unsecured Creditors Comm.*, 987 F.3d 1284, 1295 (10th Cir. 2021).

Here, as discussed above, the State Court Judgment prevents Debtors' estate from asserting a claim to an interest in the Property. And, there is no evidence the LLC has a positive liquidation value such that a distribution could be made on account of Ms. Ayaad's membership interest. The $20,000 the Creditors would pay under the Settlement Agreement to resolve those issues is well within the universe of reasonable actions, given the low likelihood of success of the arguments asserted by Mr. Ayaad. Although collection of any judgment against Creditors may not be difficult, the expense of additional litigation would be substantial and would be an unfair burden to impose on the estate or the Creditors. Trustee and the Court are required to consider the interests of

Creditors, whose claim includes a substantial unsecured portion, and of other creditors, none of whom objected to the Settlement Agreement. Ms. Ayaad did not object to the Settlement Agreement. Considering each of the four factors, the Court properly found the Settlement Agreement to be in the best interests of the estate.

As to the Rental Property, Trustee is entitled to sell it under the Bankruptcy Code. Without the Settlement Agreement, there is no evidence the estate would receive a distribution of net sales proceeds. This Court cannot reduce or alter the Creditors' judgment lien. The $20,000 the Creditors would allow the estate to receive under the Settlement Agreement is well within the universe of reasonable actions. The expense of further litigation on this matter would be substantial and would be an unfair burden to impose on the estate, the Creditors, or other creditors, none of whom objected to the Settlement Agreement. Considering each of the four factors, the Court properly found the Settlement Agreement to be in the best interests of the estate.

### D.    Conclusion.

For all the reasons discussed above, the Court finds Mr. Ayaad has not presented new arguments or supporting facts that were not available at the time of the hearing. Mr. Ayaad has not presented extraordinary circumstances, an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice.

The Settlement Agreement does not release valuable claims for pennies on the dollar. Instead, the Settlement Agreement requires Creditors to pay $40,000[7] to resolve disputes on which they are entitled to prevail as a matter of law. The $40,000 fairly represents the "nuisance value" of the parties' disputes, almost all of which have been fully litigated and finally adjudicated in the State Court, culminating in the entry of the State Court Judgment in an amount exceeding $1.25 million. Creditors' rights to enforce that Judgment have been delayed for over two years while Debtors attempted to reach a resolution in this Court, but that resolution did not happen. The purpose of a Chapter 7 case is liquidation and distribution of Debtors' assets, and Trustee is proceeding properly to perform her responsibilities under the Bankruptcy Code.

The Court's decision to approve the Settlement Agreement was fully informed and based upon an objective evaluation of developed facts. The Settlement Agreement fell well within the range of reasonable actions and was properly approved. The Motion for Reconsideration will therefore be denied.

## III.    MOTION FOR STAY PENDING APPEAL

To obtain a stay pending appeal, Mr. Ayaad must show the following: (A) he has a likelihood of success on the merits; (B) he would suffer irreparable injury if the stay were denied; (C) no substantial harm will come to his estate; and (D) the stay will do no harm

---

[7] More precisely, the Settlement Agreement requires Creditors to pay $20,000 and waive a right to distribution of $20,000 of sale proceeds from the Rental Property.

ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL
Case No. 23-13723 KHT

to the public interest. *See Lang v. Lang (In re Lang)*, 305 B.R. 905, 911 (10th Cir. BAP 2004). The Court will discuss each factor in turn.

### A.    Likelihood of Success.

To obtain a stay pending appeal, Mr. Ayaad must make a strong showing he is likely to succeed on the merits of his appeal. As the Supreme Court has held, a chance of success that is "better than negligible" or "a mere possibility" is insufficient. *Nken v. Holder,* 556 U.S. 418, 434 (2009). The Court cannot find Mr. Ayaad has made a sufficient showing.

The Court was not required to conduct an evidentiary hearing or a mini-trial on the issues included in the Settlement Agreement. *In re Brutsche*, 500 B.R. 62, 71 (Bankr. D.N.M. 2013). As discussed above, the Court and Trustee have become familiar with the facts and the parties' contentions over the two years Debtors' case has been pending before this Court. The facts and law supporting approval of the Settlement Agreement were well-established. Mr. Ayaad's asserted factual and legal disputes were properly rejected as collateral attacks on the State Court Judgment. Mr. Ayaad's issues on appeal misperceive the finality and effect of the State Court Judgment, the role of a Chapter 7 Trustee, and the role of this Court.

The Court allowed Mr. Ayaad to present his objection to the Settlement Agreement, out of an abundance of caution, and then properly canvassed the issues and determined the Settlement Agreement fell well within the range of reasonableness, based on the undisputed facts and the applicable law. The Court cannot find Mr. Ayaad has shown a likelihood of success on the merits of his appeal. The first factor does not support a stay pending appeal.

### B.    Irreparable Injury.

To show a threat of irreparable injury, Mr. Ayaad must demonstrate "a significant risk that he . . . will experience harm that cannot be compensated after the fact by money damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Mr. Ayaad has made no such showing.

The rights Mr. Ayaad asserts are valuable and are being lost in the Settlement Agreement do not belong to him. The full extent of his rights to an interest in the Property, to a distribution from the LLC, and to the Rental Property belong to his bankruptcy estate and are subject to Trustee's administration. Mr. Ayaad voluntarily submitted to the jurisdiction of this Court and willingly chose to proceed in Chapter 7, after being advised by counsel. Mr. Ayaad cannot now escape the consequences of his fully informed decision.

To the extent Mr. Ayaad has any interest in the proceedings in this Court, it is a monetary one. He has not shown his estate is solvent, such that he would be entitled to a distribution after payment in full to all his creditors, but if it were, and the Settlement Agreement reduced the ultimate amount of the distribution available to him, his harm

would be one that could be compensated after the fact by money damages. The second factor does not support a stay pending appeal.

### C.    Harm to Estate.

If Trustee were not able to enter into the Settlement Agreement, she would be required to spend additional time and incur additional attorney's fees litigating matters on which the estate has no real chance of success.

The Bankruptcy Code requires Trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." § 704. Further delay and expense would serve no purpose and would harm all creditors, who are entitled to expeditious administration of Debtors' estate. The third factor does not support a stay pending appeal.

### D.    Public Interest.

To the extent applicable, the public interest favors enforcement of final judgments such as the State Court's judgment, prompt and efficient administration of bankruptcy cases, and settlements of pending disputes. As another bankruptcy court held:

> The court explained in *In re Doctors Hospital of Hyde Park, Inc.*, 376 B.R. 242, 249 (Bankr. N.D. Ill. 2007), "[t]he public policy behind bankruptcy is the equality of distribution to creditors within the priorities established by the Code within a reasonable time." *See also In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004) (the public interest favors the expeditious administration of bankruptcy cases, and also recognizes the desirability of implementing the legitimate expectations of creditors to get paid); *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 148 (Bankr. D. Nev. 2008) ("There is a great public interest in the efficient administration of the bankruptcy system."). Furthermore, settlements are strongly encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the litigation load of the courts. *In re BG Petroleum, LLC*, 525 B.R. 260, 270 (Bankr. W.D. Pa. 2015).

*In re Stewart*, 604 B.R. 900, 909 (Bankr. W.D. Okla. 2019). The fourth factor does not support a stay pending appeal.

### E.    Conclusion.

The Court cannot find Mr. Ayaad has shown he is likely to succeed on the merits of his appeal, he would suffer irreparable injury if the stay were denied, his estate will not be harmed by a stay, and the public interest will not be harmed by a stay. He is not entitled to a stay pending appeal. The Motion for Stay will be denied.

ORDER DENYING RECONSIDERATION AND DENYING STAY PENDING APPEAL
Case No. 23-13723 KHT

## IV.    CONCLUSION

For the reasons discussed above, the Court finds the Motion for Reconsideration and the Motion for Stay must be denied.

Accordingly,

IT IS HEREBY ORDERED that the Motions are DENIED.

Dated: October 28, 2025                    BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge

14

EXHIBIT 6
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

## Minute Orders

**Case Number:** 2020CV031825                          **Division:** 7
**Case Type:** Fraud                                   **Judicial Officer:** David A Gilbert
**Case Caption:** Almomani, Safwan et al v. Ayaad, Julie et al   **Court Location:** El Paso County

---

Order Date: 03/01/2021

GILBERT/KLC/FTR 11:12 AM DIV 7 S402 3/1/21 STAT PLTF PWC ATD RANDS; DEF COUNSEL LOHSE; ALL PARTIES BY WEBEX; BEFORE COURT ON DEF REQ FOR EMERGENCY PHONE CONFERENCE RE 2/23/21 COURT ORDER GRANTING PLTF EMERGENCY MTN FOR INJUNCTION ALONG W/ PLTF'S ALLEGATIONS AGAINST DEF; PLTF ALLEGES DEF HAS OPENED NEW BUSINESS AND HAS TRANSFERED ASSESTS TO THAT BUSINESS ALONG W/ ELECTRONIC ACCOUNTS AND EMPLOYEES; DEF COUNSEL ADVISES HIS CLIENT HAS SET UP NEW BUSINESS AND DEF COUNSEL ADVISED HIS CLIENT THAT THIS WAS ALLOWED- DEF COUNSEL APPOLOGIZES FOR HIS INCORRECT LEGAL ADVISE GIVEN TO DEF; PLTF REQ ORIGINAL BUSINESS REMAIN OPEN AND FOR DEF TO UNDO ALL CHANGES & TRANSFERS MADE TO THE BUSINESS; COURT HEARS DISCUSSION OF THE PARTIES AND FINDS DEF'S ACTIONS TO BE IN DIRECT VIOLATION OF THE COURTS ORDER; COURT ORDERS ORIGINAL BUSINESS TO REMAIN OPEN W/ PLTF TO PROCEED AS SOLE MANAGER- ALL FUNDS AND FUNCTIONS OF THE BUSINESS SHALL BE RETURNED & RESTORED W/ DEF TO PROVIDE ALL ACCOUNT INFO & STATEMENTS RE NEW BUSINESS WITHIN 24 HRS; COURT WILL CONSIDER ATTY FEES AND COSTS RE INJUNCTION MATTER; PLTF COUNSEL TO FILE LONG ORDER; CMCF SET 3/19/21 AT 130PM. /KLC

EXHIBIT 6 Page 1 of 1

1/1

EXHIBIT 7
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, COLORADO | |
| Court Address:<br>270 S. TEJON, COLORADO SPRINGS, CO, 80903 | DATE FILED: February 23, 2021 5:02 PM<br>CASE NUMBER: 2020CV31825 |
| **Plaintiff(s)** SAFWAN ALMOMANI et al. | |
| v. | |
| **Defendant(s)** JULIE AYAAD et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number:  2020CV31825 |
| | Division: 7          Courtroom: |
| **Order:[Proposed] Order Granting Plaintiff's Emergency Motion for Injunction** | |

The motion/proposed order attached hereto: GRANTED.

The Court intended to issue this order by granting this proposed order with the notes provided earlier when the Motion was granted. This Order is what should be served reflecting the specific injunction approved by the the Court.

This Order is issued effective today 1:40 pm (nunc pro tunc) to the issuance of the Order earlier today with the Motion for Injunction attached instead of this Order which was supposed to be the attached document.

The Court regrets the error.

Issue Date:  2/23/2021

*David Gilbert*

DAVID A GILBERT
District Court Judge

EXHIBIT 7 Page 1 of 4

| | |
|---|---|
| District Court, El Paso County, Colorado<br>270 South Tejon Street<br>Colorado Springs, CO 80903 | |
| **Plaintiffs:**<br>SAFWAN ALMOMANI, individually; SAFWAN ALMOMANI, derivatively on behalf of SAHARA CAFÉ, LLC, a Colorado limited liability company, and ALL OTHER SIMILARLY SITUATED.<br><br>**Defendants:**<br>JULIE AYAAD, an individual; OSAMA AYAAD, an individual.<br><br>**Third Party Defendant:**<br>JANE H. MURPHY, an individual | ▲COURT USE ONLY▲ |
| | Case Number: 2020CV031825<br><br>Div.: 7 |
| **[PROPOSED] ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTION** | |

This matter is before the Court on Plaintiff's Emergency Motion for Injunction (the "Motion").  After reviewing the record, and being advised in the premises, the Court hereby FINDS as follows:

1. In violation of this Court's Orders entered on January 11, 2021 and January 28, 2021, Defendants have opened a new limited liability company, The Sahara Mediterranean Café LLC (the "New LLC") and are operating the restaurant that is rightfully owned by Sahara Café LLC through this New LLC.

1

EXHIBIT 7 Page 2 of 4

2. Defendants opened the New LLC, and transferred the restaurant's operations to the New LLC, on or around the same day this Court issued a specific Order against such actions, January 28, 2021.

3. In its Order dated January 28, 2021, this Court specifically warned that it would close the business upon credible evidence of any party "selling, destroying, depleting, appropriating, damaging, hiding or dissipating any funds or other assets of the business before a full inventory and distribution of assets can be determined."

4. The Court has received credible evidence that on and after January 28, 2021, Defendants depleted, appropriated, hid, and dissipated funds and assets belonging to Sahara Café LLC. Defendants performed such actions in plain violation of this Court's Orders.

5. Defendants installed a new credit card processing machine at the restaurant, and credit card deposits belonging to Sahara Café LLC have been diverted to unknown accounts.

6. Defendants publicly posted a new public health license at the restaurant in the name of the New LLC.

7. By Defendants' own admission, through their counsel, Defendants are operating the restaurant through their New LLC, to the exclusion of Plaintiffs.

8. Defendant Osama Ayaad violated this Court's Orders. Accordingly, the Court hereby ORDERS as follows:

1. Defendants Osama Ayaad and Julie Ayaad are enjoined from entering the Business Premises or removing any property from the Business Premises.

2

EXHIBIT 7 Page 3 of 4

2.  Defendants Osama Ayaad and Julie Ayaad are enjoined from spending managing, removing, dissipating, hiding, or otherwise disposing of any funds or property held by either The Sahara Mediterranean Café LLC or Sahara Café LLC. and Plaintiff's are directed to work with the stipulated neutral accountant and manage Sahara Café, LLC. or in the alternative the restaurant presently operated at 954 Manitou Avenue, Manitou Springs, Colorado 80829 (the "Business Premises") shall cease operations at the close of the business day on which this Order enters.

3.  As a sanction for Defendants' violations of this Court's Orders, an award of reasonable attorney fees and costs hereby enters in favor of Plaintiff Safwan Almomani, and against Defendants Osama Ayaad and Julie Ayaad, for all fees and costs incurred in bringing the Motion and conferring on the Motion.  Plaintiff shall file a motion for attorney fees, with supporting materials, within 21 days of this Order.  Further sanctions may enter in future Orders.

4.  This injunction shall remain in effect until a further Order is issued by this Court.


_____
District Court Judge


3

EXHIBIT 7 Page 4 of 4

EXHIBIT 8
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

Instruction No. _____/_____          DATE FILED: August 19, 2022

I will now explain the claims and defenses of each party to the case and the law governing the case. Please pay close attention to these instructions. These instructions include both general instructions and instructions specific to the claims and defenses in this case. You must consider all the general and specific instructions together. You must all agree on your verdict, applying the law, as you are now instructed, to the facts as you find them to be.

The parties to this case are: *Sahara Café, LLC and Safwan Almomani the plaintiffs with Jane Murphy as Third-Party defendant and Osama Ayaad and Julie Ayaad, the defendants.*

The plaintiff claims: during the operation of Sahara Café, LLC, from 2012 until 2021, *Julie Ayaad* and *Osama Ayaad* through deceit based on fraud engaged in conduct to misrepresent facts to *Safwan Almomani* in an effort to convince him revenues were lower than actual received in an effort to divert money to themselves.

They further allege that *Julie Ayaad* and *Osama Ayaad* as a members of Sahara breached duties owed to Sahara by failing to safeguard and misappropriated assets belonging to Sahara and failed to act in the best interest of Sahara.

They further allege that both conspired to engage in acts which resulted in the diverting of money to themselves causing damage to both Sahara and the other member of Sahara, *Safwan Almomani.*

Exhibit 8 Page 1 of 43

Plaintiff's content that *Julie Ayaad* and *Osama Ayaad* knowingly diverted funds from Sahara which they knew did not belong to them with an intent to deprive Sahara and the other member of Sahara, *Safwan Almomani*, from those funds permanently.

Defendant asserts they are the 50% equitable and rightful owners of property 954 Manitou Ave, Manitou Springs, Colorado ("the property") based upon the parties July 31, 2013, contract and operating account agreement. Plaintiffs' allegations are simply pretext or cover for plaintiffs' attempts to keep Defendants' from owning this real property. Plaintiffs waived any right to bring these claims due to their own unclean hands. Indeed, Plaintiffs created and were complicit in the cash accounting and bookkeeping that they now complain of. Defendants will be asking the Court to award specific performance of the July 31, 213 contract, which requires Plaintiff to deed 50% of the property to Defendants.

These are the issues you are to decide.

Exhibit 8 Page 2 of 43

Instruction No. _2_

These instructions contain the law that you must use in deciding this case. No single instruction states all the applicable law. All the instructions must be read and considered together.

You must not be concerned with the wisdom of any rule of law. Regardless of any opinion you may have as to what the law should be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court.

I do not, by these instructions, express any opinions as to what has or has not been proved in the case, or to what are or are not the facts of the case.

Exhibit 8 Page 3 of 43

Instruction No. ___3___

In your deliberations, your duty is to apply my instructions of law to the evidence that you have seen and heard in the courtroom. You are not allowed to look at, read, consult, or use any material of any kind, including any newspapers, magazines, television and radio broadcasts, dictionaries, medical, scientific, technical, religious, or law books or materials, or the Internet in connection with your jury service. I want to emphasize that you must not seek or receive any information about this case from the Internet, which includes all social networking, Google, Wikipedia, blogs, and any other website. You are not allowed to do any research of any kind about this case.

Do not use any information from any other source concerning the facts or the law applicable to this case other than the evidence presented and the instructions that I give you. Do not do your own investigation about this case. You are not allowed to visit any place[s] mentioned in the evidence. If this is an area that you normally go through, you should try to take an alternate route. If you are not able to take an alternate route, you should not gather any information from that location.

Exhibit 8 Page 4 of 43

Instruction No. ___4___

1. The plaintiff has the burden of proving its claims by a preponderance of the evidence. The defendant has the burden to prove any counterclaims by a preponderance of the evidence.

2. To prove something by a "preponderance of the evidence" means to prove that it is more probably true than not.

3. "Burden of proof" means the obligation a party has to prove its claims or defenses by a preponderance of the evidence. The party with the burden of proof can use evidence produced by any party to persuade you.

4. If a party fails to meet its burden of proof as to any claim or defense or if the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, you must reject that claim or defense.

Exhibit 8 Page 5 of 43

Instruction No. _____5_____

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

Exhibit 8 Page 6 of 43

Instruction No. ___6___

You must find that a person knew a fact, if (he) (she) had information that would have led a reasonable person to inquire further, and that inquiry would have revealed that fact.

Exhibit 8 Page 7 of 43

Instruction No. ___7___

The evidence in the case consists of the sworn testimony of all the witnesses (all exhibits which have been received in evidence), (all facts which have been admitted or agreed to), (all facts and events which have been judicially noticed), (and all presumptions stated in these instructions).

In deciding the facts, you must consider only the evidence received at trial. Evidence offered at the trial and rejected or stricken by the Court must not be considered by you. Statements, remarks, arguments, and objections by counsel and remarks of the Court not directed to you are not evidence.

You are to consider only the evidence in the case and the reasonable inferences from that evidence. An inference is a conclusion that follows, as a matter of reason and common sense, from the evidence.

A. Sahara Café, LLC is a limited liability company registered and licensed to do business in the State of Colorado, operating as a restaurant and cafe.

B. The parties stipulate that Sahara Café, LLC is located at 954 Manitou Ave., Manitou Springs, El Paso County, Colorado

Exhibit 8 Page 8 of 43

Instruction No. ___8___

Evidence may be either direct or circumstantial. Circumstantial evidence is the proof of facts or circumstances from which the existence or nonexistence of other facts may reasonably be inferred. All other evidence is direct evidence. The law makes no distinction between the effect of direct evidence and circumstantial evidence.

Exhibit 8 Page 9 of 43

Instruction No. _____9_____

Certain testimony has been summarized and read into evidence from a deposition. A deposition is testimony taken under oath before the trial. You are to consider that testimony as if it had been given by the witness from the witness stand.

Exhibit 8 Page 10 of 43

Instruction No.  _10_

The weight of evidence is not necessarily determined by the number of witnesses testifying to a particular fact.

Exhibit 8 Page 11 of 43

Instruction No. _11_

You must not be influenced by sympathy, bias, or prejudice for or against any party in this case.

Exhibit 8 Page 12 of 43

Instruction No. _12_

You are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You should take into consideration their means of knowledge, strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or lack of consistency in their testimony; their motives; whether their testimony has been contradicted or supported by other evidence; their bias, prejudice or interest, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the credibility of the witnesses.

Based on these considerations, you may believe all, part or none of the testimony of a witness.

Exhibit 8 Page 13 of 43

Instruction No. _13_

A witness qualified as an expert by education, training, or experience may state opinions. You should judge expert testimony just as you would judge any other testimony. You may accept it or reject it, in whole or in part. You should give the testimony the importance you think it deserves, considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.

Exhibit 8 Page 14 of 43

Instruction No. _14_

The plaintiffs, Sahara Café, LLC and *Safwan Almomani* have sued for the same damages on four different claims for relief. The claims for relief on which the plaintiff has sued and on which you have been instructed are:

False Representation by both *Julie Ayaad* and *Osama Ayaad*.

Breach of Duty of Care and Loyalty and Good Faith as to *Julie Ayaad* and *Osama Ayaad*,

Civil Conspiracy by both *Julie Ayaad* and *Osama Ayaad*.

Civil theft by both *Julie Ayaad* and *Osama Ayaad*.

If you find for the plaintiff on more than one claim for relief, you may award them damages only once for the same damages.

Exhibit 8 Page 15 of 43

Instruction No. _____15_____

For the plaintiff, *Safwan Almomani* to recover from the defendants *Julie Ayaad* and *Osama Ayaad*, on its claim of deceit based on fraud, you must find all of the following have been proved by a preponderance of the evidence:

1. The defendant made a false representation of a past or present fact;

2. The fact was material;

3. At the time the representation was made, the defendant:

(a) knew the representation was false; or

(b) was aware that (he) (she) did not know whether the representation was true or false;

4. The defendant made the representation with the intent that the plaintiff would rely on the representation;

5. The plaintiff relied on the representation;

6. The plaintiff's reliance was justified; and

7. This reliance caused damages to the plaintiff.

If you find that any one or more of these 7 statements has not been proved, then your verdict must be for the defendant.

On the other hand, if you find that all of these 7 statements have been proved, then your verdict must be for the plaintiff).

Exhibit 8 Page 16 of 43

Instruction No. _16_

A false representation is any oral or written words, conduct, or combination of words and conduct that creates an untrue or misleading impression in the mind of another.

Exhibit 8 Page 17 of 43

Instruction No. _____17_____

A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do.

A fact may also be material even though a reasonable person might not regard it as important, if (the person stating it knows that) (the person concealing it knows that) the person receiving the information would regard it as important in deciding what to do.


The plaintiff, *Safwan Almomani*, relied on the claimed representation if he believed it was true, and based on that representation:

     1. Took action he otherwise would not have taken or

     2. Decided not to take action he otherwise would have taken


A person is justified in assuming that a representation is true if a person of the same or similar intelligence, education, or experience would rely on that representation.

Exhibit 8 Page 18 of 43

Instruction No. _____

There is no instruction number 18.

and no instruction number 19.

Exhibit 8 Page 19 of 43

Instruction No. _20_

A person is justified in assuming that a representation is true if a person of the same or similar intelligence, education, or experience would rely on that representation.

Exhibit 8 Page 20 of 43

Instruction No. __21__

For the plaintiff, *Safwan Almomani*, to recover from the defendants *Julie Ayaad Ayaad* and *Osama Ayaad* on his claim of breach of fiduciary duty, you must find that all of the following have been proved by a preponderance of the evidence:

1. The defendant was acting as a fiduciary of the plaintiff with respect to ownership of Sahara Café, LLC,

2. The defendant breached a fiduciary duty to the plaintiff;

3. The plaintiff had damages; and

4. The defendant's breach of fiduciary duty was a cause of the plaintiff's damages.

If you find that any one or more of these 4 statements has not been proved, then your verdict must be for the defendant.

On the other hand, if you find that all of these 4 statements have been proved, then your verdict must be for the plaintiff.

Exhibit 8 Page 21 of 43

Instruction No. _22_

A fiduciary relationship exists whenever one person is entrusted to act for the benefit of or in the interests of another and has the legal power to do so.

If you find that the defendants, *Julie Ayaad* and *Osama Ayaad* were acting as a *partner* of the plaintiff, *Safwan Almomani*, with respect to Sahara Café, LLC, then you are instructed that the defendant was acting as a fiduciary of the plaintiff, *Safwan Almomani*, with respect to Sahara Café, LLC.

Exhibit 8 Page 22 of 43

Instruction No. __23__

For the plaintiff, *Safwan Almomani*, to recover from the defendants, *Julie Ayaad* and *Osama Ayaad* on his claim of civil theft, you must find that all of the following have been proved by a preponderance of the evidence:

1. The plaintiff had an ownership interest in the profits of Sahara Café, LLC;

2. The defendant knowingly by deception obtained the plaintiff's profits of Sahara Café, LLC; and

3. The defendant did so with the intent to permanently deprive the plaintiff of the use or benefit of the plaintiff's profits of Sahara Café, LLC.

If you find that any one or more of these three statements have not been proved, then your verdict must be for the defendant.

On the other hand, if you find that all of these three statements have been proved then your verdict must be for the plaintiff.

Exhibit 8 Page 23 of 43

Instruction No. _24_

A person acts with intent when his or her conscious objective is to cause a specific result.

A person acts knowingly with respect to conduct or to a circumstance when he or she is aware that his or her conduct is of such nature or that such circumstance exists. A person acts knowingly with respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause the result.

Exhibit 8 Page 24 of 43

Instruction No. _25_

If you find in favor of the plaintiff as to theft, but do not award any actual damages, you shall

award the plaintiff statutory damages in the amount of $200.

Exhibit 8 Page 25 of 43

Instruction No. _26_

For the plaintiff, *Safwan Almomani*, to recover from the defendants *Julie Ayaad* and *Osama Ayaad*, on his claim of civil conspiracy, you must find that all of the following have been proved by a preponderance of the evidence:

1. The defendants agreed, by words or conduct, to accomplish a goal through unlawful means;

2. One or more acts were performed to accomplish the unlawful goal;

3. The plaintiff had damages; and

4. The plaintiff's damages were caused by the acts performed to accomplish the goal.

If you find that any one or more of these 4 statements has not been proved, then your verdict must be for the defendant(s).

On the other hand, if you find that all of these 4 statements have been proved, then your verdict must be for the plaintiff.

Exhibit 8 Page 26 of 43

Instruction No. _27_

"Unlawful means" include failure to properly report taxes, failure to properly account cash expenditures, and taking money from Sahara Café, LLC without authority.

The fact that this definition of "unlawful means" is being given to you does not mean that the court is instructing you to find that unlawful means were used. The question of whether or not such means were used is a question of fact for you to determine.

"Unlawful goal" means theft of funds or property.

The fact that this definition of "unlawful goal" is being given to you does not mean the court is instructing you to find that the defendant(s) sought to accomplish an unlawful goal. The question of whether the defendants sought to accomplish such a goal is a question of fact for you to determine.

Exhibit 8 Page 27 of 43

Instruction No. _28_

The fact that an instruction on measure of damages has been given to you does not mean that the Court is instructing the jury to award or not to award damages. The question of whether or not damages are to be awarded is a question for the jury's consideration.

Exhibit 8 Page 28 of 43

Instruction No. _29_

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

Exhibit 8 Page 29 of 43

Instruction No. _30_

Plaintiff, *Safwan Almomani*, has the burden of proving, by a preponderance of the evidence, the

nature and extent of his damages. If you find in favor of the plaintiff, you must determine the total

dollar amount of plaintiff's damages, if any, that were caused by the, deceit based on fraud, breach

of fiduciary duty, civil conspiracy, and civil theft by the defendants, *Julie Ayaad* and *Osama*

*Ayaad*,

In determining such damages, you shall consider the following:

1. Any economic losses which plaintiff has had or will probably have in the future, including:

    a. Anything of value or any profit the defendants, *Osama Ayaad* and *Julie Ayaad*, gained

    as a result of harmful acts taken by the defendants.

    b. Any damage which plaintiff has had as a result of a third person making a claim against

    him because of the harmful acts of the defendants;

Exhibit 8 Page 30 of 43

Instruction No. _____31_____

For the defendants to prove their claim for breach of contract, you must find all of the following have been proved by a preponderance of the evidence:

1. The plaintiffs entered into a contract with the defendants to purchase real estate and run a restaurant;

2. The plaintiffs failed to deed 50% of the real estate as was required by the contract; and

3. The defendants substantially complied with the terms of the contract.

If you find that any one or more of these statements has been proved, then your verdict must be for the plaintiffs.

On the other hand, if you find that all of these statements have been proved, then your verdict must be for the defendants.

Exhibit 8 Page 31 of 43

Instruction No. _32_

A contract is an agreement between two or more persons or entities. A contract consists of an offer and an acceptance of that offer, and must be supported by consideration. If any one of these three elements is missing, there is no contract.

Exhibit 8 Page 32 of 43

Instruction No. _32 a_

"Consideration" is a benefit received or something given up as agreed upon between the parties.

Exhibit 8 Page 33 of 43

Instruction No. _3 3_

A contract does not have to be in writing. If written, it does not have to be signed by either party or dated. A contract may be partly oral and partly in writing.

Exhibit 8 Page 34 of 43

Instruction No. _34_

After parties enter into a contract, they may agree (orally) (or) (in writing) to change it. There must be an offer to change the contract, acceptance of that offer, and consideration for the change.

Exhibit 8 Page 35 of 43

Instruction No. _____35_____

A breach of contract is the failure to perform a contractual promise when performance is due.

A material breach occurs when a party fails to substantially comply with the essential terms of a contract.

A material breach by one party excuses performance by the other party to the contract.

Exhibit 8 Page 36 of 43

Instruction No. _36_

A party (substantially performs) (or) (substantially complies with) the terms of a contract when the party performs the essential obligations under the contract, and the other party receives substantially what (he) (she) (it) contracted for.

To determine whether the party has (substantially performed) (or) (substantially complied with) the essential obligations under the contract, you may consider the nature of the promised performance, the purpose of the contract, and whether any defects in performance have defeated the purpose of the contract.

Exhibit 8 Page 37 of 43

Instruction No. _37_

If a contract does not state a specific time when the parties are to perform their obligations under the contract, then the parties are to perform within a reasonable time. In deciding whether a contractual obligation has been performed within a reasonable time, you may consider all the circumstances, including the nature of the contract, the parties' diligence, and any reason why the obligation was not performed at an earlier time.

Exhibit 8 Page 38 of 43

Instruction No. _____38_____

A contract may include one or more conditions precedent. A condition precedent is an event that must occur before performance under a contract becomes due.

Exhibit 8 Page 39 of 43

Instruction No. _*39*_

Every contract requires the parties to act in good faith and to deal fairly with each other in performing or enforcing the express terms of the contract.

A party performs a contract in good faith when its actions are consistent with the agreed common purpose and with the reasonable expectations of the parties. The duty of good faith and fair dealing is breached when a party acts contrary to that agreed common purpose and the parties' reasonable expectations.

Exhibit 8 Page 40 of 43

Instruction No. ___40___

Once you begin your deliberations, if you have a question about the evidence in this case or about the instructions or verdict forms that you have been given, your foreperson should write the question on a piece of paper, sign it and give it to the Bailiff who will bring it to me.

I will then confer with the attorneys as to the appropriate way to answer your question. However, there may be some questions that, under the law, I am not permitted to answer. If it is improper for me to answer the question, I will tell you that. Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

Exhibit 8 Page 41 of 43

Instruction No. ___41___

The original forms of the written instructions and the exhibits are a part of the court record. Do not place any marks or notes on them. The instructions labeled "copy" may be marked or used in any way you see fit.

The Bailiff will now escort you to the jury room. After you get to the jury room you shall select one of your members to be the foreperson of the jury. That person will be in charge of your discussions. You must all agree on your verdict, and you must sign the original form of whatever verdicts you reach.

Please notify the Bailiff when you have reached a verdict, but do not tell the Bailiff what your verdict is. You shall keep the verdict forms, these instructions, and the exhibits until I give you further instructions.

State of Colorado, County of El Paso
Certified to be a true and correct
copy of the original in my custody.

JAN 1 9 2024

STEH KING
CLERK OF THE DISTRICT/COUNTY COURT
By_____Deputy

Exhibit 8 Page 42 of 43



Exhibit 8 Page 43 of 43

EXHIBIT 9
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

| | |
|---|---|
| District Court, El Paso County, Colorado<br>270 South Tejon Street<br>Colorado Springs, CO 80903 | ~~DATE FILED: August 19, 2022~~ |
| **Plaintiffs:**<br>SAFWAN ALMOMANI, individually; SAFWAN ALMOMANI, derivatively on behalf of SAHARA CAFÉ, LLC, a Colorado limited liability company, and ALL OTHER SIMILARLY SITUATED.<br><br>**Defendants:**<br>JULIE AYAAD, an individual; OSAMA AYAAD, an individual. | ▲COURT USE ONLY▲ |
| | Case Number: 2020CV31825<br><br>Div.:   7   Ctrm: 402 |
| **SPECIAL VERDICT FORM** | |

You are instructed to answer the following questions.  You must all agree on your answer to each question and you must all sign the completed form on the signature lines.

1.    Do you find that Mr. Almomani is entitled to recover damages from Defendants on his claims of Breach of Fiduciary Duty under Instruction No. _21_ ? (Yes or No)   Yes

2.    Do you find that Mr. Almomani is entitled to recover damages from Defendants on his claims of deceit based on fraud under Instruction No. _15_ ? (Yes or No)   Yes

3.    Do you find that Mr. Almomani is entitled to recover damages from Defendants on his claim of civil conspiracy under Instruction No. _26_ ? (Yes or No)   Yes

4.    Do you find that Mr. Almomani is entitled to recover damages from Defendants on his claim of civil theft under Instruction No. _23_ ? (Yes or No)   Yes

1

EXHIBIT 9 Page 1 of 4

5.      If you answered all of the above questions "No," then stop here and sign this Special Verdict Form as indicated below.

6.      If, on the other hand, you answered "Yes" to any of the above questions 1, 2 and/or 3, then enter the total amount of damages you award Mr. Almomani on the line below:

$  200,000 .

If you answered "Yes" to question 4 above, then please enter the amount of damages you award to Mr. Almomani as damages for civil theft.

$ 250,000.00.

7.   Do you find that Plaintiff Safwan Almomani breached an agreement to deed 50% of the restaurant building to Defendants under Instruction No. ~~31~~ (31) ? (Yes or No)

Answer NO .

2

EXHIBIT 9 Page 2 of 4

Please sign this Special Verdict Form on the signature lines provided below.

State of Colorado, County of El Paso
Certified to be a true and correct
copy of the original in my custody.

JAN 1 9 2024

SHERI KING

CLERK OF THE DISTRICT/COUNTY COURT EL PASO COUNTY, COLORADO

By

_____

3

EXHIBIT 9 Page 3 of 4



EXHIBIT 9 Page 4 of 4

EXHIBIT 10
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

| | |
|---|---|
| **DISTRICT COURT, EL PASO COUNTY, COLORADO**<br>Court Address:<br>270 S. TEJON, COLORADO SPRINGS, CO, 80903<br>**Plaintiff(s)** SAFWAN ALMOMANI et al.<br>v.<br>**Defendant(s)** JULIE AYAAD et al. | DATE FILED: August 31, 2022 10:36 AM<br><br><br>⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2020CV31825<br>Division: 7        Courtroom: |
| **Order of Judgment** | |

1. At the conclusion of the trial, the jury deliberated and reached a decision as to all claims and completed a verdict form which was filed with the Court on August 19, 2022.

2. The jury found the Plaintiffs are entitled to judgment in the amount of:

$200,000.00.- for Breach of Fiduciary Duty, Fraud and Deceit, and Civil Conspiracy
- 250,000.00 - for Civil Theft- (C.R.S. 18-4-405 provides for treble damages) resulting in a
damage award of:
750,000.00.-for Civil Theft

**Wherefore, Judgment enters in the amount of $950,000.00 against Defendants and in favor of Plaintiffs plus post-judgement interest at the statutory rate.** All damages are joint and several between the Defendants Julie Ayaad and Osama Ayaad. Plaintiff shall have 21 days to file any Motion for Fees and Costs and shall include any bill of fees and costs itemizing their request. Defense shall have 21 days to respond to Plaintiff's Motion for Fees and Costs.

Note: the Court declines to award requested pre-judgment interest in the manner requested by Plaintiffs. The specific dates of ripening of claims upon which judgment has been granted are not sufficiently stated for proper calculation of pre-judgment interest.

Issue Date: 8/31/2022

*[signature]*

DAVID A GILBERT
District Court Judge

State of Colorado, County of El Paso
Certified to be a true and correct
copy of the original in my custody.

JAN 1 9 2024

CLERK OF THE DISTRICT [COU]NTY COURT
By_____Deputy

EXHIBIT 10 Page 1 of 2



EXHIBIT 10 Page 2 of 2

EXHIBIT 11
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

| | |
|---|---|
| **DISTRICT COURT, EL PASO COUNTY, COLORADO**<br>Court address:  **270 South Tejon**<br>             **Colorado Springs, CO 80903**<br>Phone Number: **(719) 452-5287** | DATE FILED: February 6, 2023 10:24 AM |
| Plaintiffs:<br>SAFWAN ALMOMANI, individually; SAFWAN<br>ALMOMANI, derivatively on behalf of SAHARA CAFÉ,<br>LLC, a Colorado limited liability company, and ALL<br>OTHER SIMILARLY SITUATED.<br><br>Defendants:<br>JULIE AYAAD, an individual; OSAMA AYAAD, an<br>individual.<br><br>Third Party Defendant:<br> JANE H. MURPHY, an individual | **COURT USE ONLY**<br>Case Number:<br><br><br>2020CV31825<br><br>Division **7**    Courtroom **402** |
| **ORDER OF JUDGMENT REGARDING FEES AND COSTS** | |

Hearing was held 2-3-23 on Plaintiffs' Motion for Fees and Costs following trial in this

matter held last fall. The Court heard argument from Mr. Rands on behalf of Plaintiffs and Third-

Party Defendant, Mr. Ayaad appeared *pro se* and argued the matter on his own behalf. Ms.

Ayaad did not appear and was not represented at the hearing.

The Court incorporates by reference all its comments made from the bench in the

following Judgment which enters in favor of Plaintiffs and Third-Party Defendant and against

Defendants, Mr. and Mrs. Ayaad:

**Attorney Fees:** The Court finds that Plaintiffs and Third-Party Defendant have proven that they

incurred $164,268 in legal fees to bring their successful claim for civil theft against the

Defendants. Review of the bill of fees and argument provided at hearing shows that those fees

were reasonable and necessary expenditures which should not be borne by Plaintiffs.

EXHIBIT 11 Page 1 of 3

**Costs:** The Court awards Plaintiffs and Third-Party Defendant $19,925.99 in costs as the prevailing party in this litigation. The Court has reduced the original request for $31,123.94 by $11,197.95 because the three largest entries involved expert witness fees that were paid out of a joint business account which represents the contribution of both contributors to this business. Defendants, therefore, should be credited with already paying an equal amount for these accounting services due to the partnership of Plaintiffs and Defendants in the business. (Defendants were credited with one half of each of the following expenses: 2-26-21 billing entry of $5,000 to Stockman, Kast Ryan & Company-Initial Retainer, 9-15-21 entry of $4,035.00 to Carson Shafer Tax & Accounting, and 3-8-22 entry of $13,360.85 to Stockman Kast Ryan & Company. Total of credited amounts: $11,197.95)

**Total Judgment for fees and costs:**

$164,268.00    (Attorney Fees)

  19,925.99    (Costs)

WHEREFORE, Judgment is entered for $184,193.99 Total of Fees and Costs awarded to Plaintiffs and Third-Party Defendant against Defendants jointly and severally plus statutory interest of 8% per annum until paid.

Done this 6th day of February 2023          BY THE COURT

_David A. Gilbert_
_____
David A. Gilbert
District Court Judge

State of Colorado, County of El Paso
Certified to be a true and correct
copy of the original in my custody.
JAN 1 8 2024
CLERK OF THE DISTRICT/COUNTY COURT
By                                    Deputy

EXHIBIT 11 Page 2 of 3



EXHIBIT 11 Page 3 of 3

TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
23-1233 KHT

DATE FILED: October 8, 2020 3:02 PM
FILING ID: D541AF87C91CA
CASE NUMBER: 2020CV31825

| District Court, El Paso County, Colorado<br>270 South Tejon Street<br>Colorado Springs, CO 80903 | |
|---|---|
| **Plaintiffs:**<br>SAFWAN ALMOMANI, individually; SAFWAN ALMOMANI, derivatively on behalf of SAHARA CAFÉ, LLC, a Colorado limited liability company, and ALL OTHER SIMILARLY SITUATED.<br><br>**Defendants:**<br>JULIE AYAAD, an individual; OSAMA AYAAD, an individual. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiffs:<br>Torbet Tuft & McConkie LLC<br>Bruce M. Rands, #33391<br>2 North Cascade Avenue, Suite 320<br>Colorado Springs, CO 80903<br>Phone: (719) 475-9300<br>Email: Rands@torbetlaw.com; | Case Number:<br><br>Div.:        Ctrm: |
| **COMPLAINT** | |

Plaintiff Safwan Almomani, individually and derivatively on behalf of Sahara Café LLC (the "Company" or "Sahara") and all others similarly situated, through counsel, Torbet Tuft & McConkie LLC, submits the following *Complaint* against the above-named Defendants:

### Parties

1.      Plaintiff Safwan Almomani is an owner and member of Sahara, and resides in El Paso County, Colorado.

2.      Sahara Café LLC is a Colorado limited liability company in good standing, with registered agent being Sahara Café LLC, and a principle office address of 1443 Acacia Drive, Colorado Springs, Colorado 80907

3.      Defendant Julie Ayaad is an owner and member of Sahara, and upon information and belief resides in El Paso County, Colorado, at 1432 Acacia Drive, Colorado Springs, CO 80907.

4.      Defendant Osama Ayaad is an employee of Sahara, and upon information and belief resides in El Paso County, Colorado, 1432 Acacia Drive, Colorado Springs, CO 80907.

EXHIBIT 12 Page 1 of 11

**Jurisdiction and Venue**

5.      This Court has subject matter jurisdiction over this matter because it is a civil action seeking monetary damages and/or equitable relief. Colo. Const. Art. VI § 9(1).

6.      This Court has personal jurisdiction over Defendants because each Defendant transacts business within Colorado. C.R.S. § 13-1-124(1)(a).

7.      Venue is proper in El Paso County pursuant to C.R.C.P. 98(c)(5), as Defendants committed tortious acts within El Paso County.

**General Allegations**

8.      On or about February 21, 2011, Julie Ayaad ("Ms. Ayaad") caused Articles of Organization to be filed with the Colorado Secretary of State, legally forming Sahara.

9.      Sahara is a member-managed limited liability company, without a written operating agreement.

10.     The initial members of Sahara were Ms. Ayaad and Safwan A. Almomani ("Mr. Almomani").  The membership composition of Sahara has never changed, and Mrs. Ayaad and Mr. Almomani remain the sole members.

11.     Sahara operates as "The Sahara Café," a middle eastern-themed café located at 954 Manitou Avenue, Manitou Springs, Colorado 80829.

12.     Mr. Almomani contributed $50,000.00 to the initial capital of Sahara.  Ms. Ayaad contributed nothing to the initial capital of Sahara.

13.     Sahara leases its restaurant space at 954 Manitou Avenue, Manitou Springs, Colorado 80829 (the "Building") from Mr. Almomani and his wife, Jane H. Murphy ("Ms. Murphy"), who own the Building personally as joint tenants.

14.     Mr. Almomani and Mr. Ayaad each contributed $18,000.00 toward the purchase of the building.  However, Mr. Ayaad was not on the title to the building because his addition initially disqualified them for a loan and later, he asked that he not be placed on the building title due to legal troubles with his creditors.

15.     Similarly, while Mr. Ayaad is an employee of Sahara, and has operated as a manager of the Company, Mr. Ayaad asked that he not own a membership interest due to legal troubles with his creditors.  Instead, Mr. Ayaad's wife owns a fifty percent interest in the Company.

16.     Mr. Ayaad and Ms. Ayaad (collectively, the "Ayaads"), together, have managed the operations of Sahara, to the exclusion of Mr. Almomani.

EXHIBIT 12 Page 2 of 11

17.     By way of illustration, and without limitation, Mr. Ayaad and Ms. Ayaad direct and oversee the Company's finances, supply ordering, cash management, payroll, hiring and firing of personnel, bookkeeping, tax reporting, tax compliance, banking, and regulatory compliance.

18.     Over a long period of time, the Ayaads have refused to provide access to Mr. Almomani of financial records of the Company, despite requests.

19.     Only after Mr. Almomani retained counsel, and made demands for information through counsel, did the Ayaads begin providing pieces of financial information.  However, the Ayaads continue to withhold important financial information concerning Sahara.

20.     For example, the Ayaads have not accurately accounted to Mr. Almomani for cash receipts of Sahara Café.  The Ayaads refuse to provide cash or credit card reports for the restaurant.

21.     As a restaurant, cash receipts presumably make up a significant portion of Sahara Café's gross income.

22.     However, the Ayaads have made almost no cash deposits into the bank account of Sahara over nine years.

23.     Upon information and belief, the Ayaad's have stolen a portion of the Company's cash receipts.

24.     On or around June 17, 2020, Mr. Almomani appeared at the restaurant, and accessed the Company safe with the assistance of Mr. Ayaad.  Mr. Almomani discovered $4,000.00 in cash in the Company safe, and promptly deposited the cash into the Company bank account at Chase. Mr. Almomani requested that Mr. Ayaad sign for this deposit, but Mr. Ayaad refused. Mr. Almomani then requested a daily morning meeting with Mr. Ayaad to jointly review the daily cash register and credit card reports and deposit the previous day's cash receipts into the bank.  Mr. Ayaad refused this request.

25.     Instead of agreeing to meet with Mr. Almomani to deposit daily cash receipts, Mr. Ayaad stopped keeping Company cash in the safe.  Cash deposits have not appeared in the Company bank account.  Rather the Ayaads have made multiple cash bank transactions without reporting the contents to Mr. Almomani. Upon information and belief, the Ayaads have stolen the Company's cash receipts.

26.     Mr. Almomani engaged a professional accounting firm to review the Company's finances.  When the accountant asked Mr. Ayaad about cash sales numbers, Mr. Ayaad continuously changed the cash receipts number, and could not provide documentary support.  At one point, Mr. Ayaad asserted cash receipts of approximately $124,000.00, and asserted cash expenses of approximately $130,000.00.  Mr. Ayaad could not explain how the Company spent more cash than it took in.

EXHIBIT 12 Page 3 of 11

27.     The Ayaads are the primary contact with the Company's accountant, James T. Murray, CPA.  Mr. Murray has reported to Mr. Almomani that each year, Mr. Ayaad provides financial numbers that do not balance for the preparation of the Company's tax returns. Mr. Murray and Mr. Ayaad then verbally agree on a set of numbers that are used on the Company's tax returns, which reported numbers do not have documentary support.  This creates a serious risk of additional tax liability and penalties for the Company.

28.     Mr. Murray further reported that Some years Mr. Ayaad wanted to show more income from the Company so that the Ayaads could qualify for additional loans while other years Mr. Ayaad attempted to minimize receipts to reduce tax obligations.

29.     The Ayaads have repeatedly refused to provide the password to view the video feed of the Company's security camera to Mr. Almomani.  After once providing the password, following the exchange described above on or around June 17, 2020, the Ayaads changed the password again to cut off Mr. Almomani's ability to remotely monitor the activities within the restaurant.

30.     The Ayaads refuse to place all Company employees on the Company payroll, creating serious risk of Company liability for payroll taxes and penalties, unemployment insurance premiums and penalties, and worker compensation premiums, among other risks.

31.     For the 2019 Company tax return, Mr. Ayaad asserts $84,000.00 in undocumented cash payroll expenses which were reported as income to the partners, but which withheld from Mr. Almomani.  The lack of documentation surrounding payroll expenses exposes the Company to liability for payroll taxes and unemployment insurance premiums, among other risks.  Further, the undocumented cash expenses raise the specter of financial impropriety and theft from the Company.

32.     The Ayaads refuse to verify the identity and employment authorization of all Company employees using a Form I-9, creating serious risk of Company liabilities.

33.     The Ayaads have overstaffed Sahara during the low-volume restaurant period following capacity restrictions related to COVID-19.  Rather than scaling back payroll, the Ayaads have maintained the same staffing levels as prior to the COVID-19 reductions, including Mr. Ayaad's full-time salary.

34.     Meanwhile, in April 2020, Mr. Almomani and Mrs. Ayaad contributed $4,000.00 each to the Company to help the restaurant meet payroll.

35.     The Ayaads have failed or refused to provide documentary support for significant expenses, including receipts, invoices, bills, or ledgers.

36.     While Mr. Ayaad verbally offered to let Mr. Almomani run the business his actions prevented an active role in the running of the business and The Ayaads refused to allow anyone other than Mr. Ayaad reconcile the end-of-day cash register receipts.

EXHIBIT 12 Page 4 of 11

37.     Upon information and belief, the Ayaads provide free meals to their family.

38.     The Ayaads allow family members to occupy valuable booth space in the restaurant during work hours.

39.     The Ayaads frequently avoid or skip meetings with Mr. Almomani, and intentionally keep Mr. Almomani in the dark on the Company's affairs.

40.     Mr. Almomani has made demands to the Ayaads for access to and copies of material financial documents, and information that, as a member of the Company, he has a right to receive pursuant to C.R.S. § 7-80-408, and other applicable law. The Ayaads ignored and/or avoided such demands, providing limited records when Mr. Almomani retained legal counsel. The Ayaads have forced Mr. Almomani to file this lawsuit to obtain complete financial information through discovery in this action.

41.     The value of Mr. Almomani's membership interest is unknown, and at this time, due to Defendants' actions, Mr. Almomani lacks sufficient information to evaluate his membership interest or have his membership interest appraised.

42.     The interactions between Mr. Almomani and the Ayaads have now become so acrimonious that any continued business relationship between the parties is no longer possible.

43.     It would be futile for Mr. Almomani to request that the Company file claims against the Ayaads because Mr. Almomani would be requesting that the Ayaads sue themselves through the Company.

### First Claim for Relief
### (Accounting – All Defendants)
### (by Plaintiff Safwan Almomani, individually)

44.     Plaintiff incorporates the above paragraphs herein.

45.     As a member of Sahara, Mr. Almomani is entitled to an inspection and accounting of all business and financial records of Sahara pursuant to C.R.S. § 7-80-408.

46.     An inspection and accounting of the Sahara's financial records, and a detailed tracing of all transactions and accounts is necessary for an accurate evaluation and appraisal of Sahara and to determine the degree of mismanagement, fraud, deceit, breach of fiduciary duty, and breach of the duty of good faith committed by Defendants, and Plaintiffs' damages.

47.     Mr. Almomani has previously sought cooperation in inspection and accounting and has been denied his requested access to Company financial records; thus, an order of this Court is necessary.

EXHIBIT 12 Page 5 of 11

48.     Because of Defendants' refusal to cooperate and provide Mr. Almomani with inspections of documents and  accountings, Defendants should be ordered to individually pay all costs and expenses, including copying, delivery, and professional fees, for an inspection and proper accounting by Plaintiff or professionals of Plaintiff's choosing.

49.     Plaintiff now requests a summary order of this Honorable Court compelling the Ayaads to release and deliver to Plaintiff forthwith, at their expense, the complete and unfettered access to the Company's financial records, together with a proper accounting of the records of the Company.

### Second Claim for Relief
### (Breach of Fiduciary Duty, Duty of Care, and Duty of Loyalty– Julie Ayaad)
### (derivative claim on behalf of Sahara)

50.     Plaintiff incorporates the above paragraphs herein.

51.     Julie Ayaad, while acting as a member-manager of Sahara, had authority and control over the assets, resources, money, property, business prospects of Sahara, and she occupied a position of trust and confidence as to Sahara.  As a direct result of Ms. Ayaad's authority, responsibilities, and trusted positions, she owed a duty of loyalty and a fiduciary duty to Sahara to protect the assets, resources, money, property, and business prospects of Sahara against theft, fraud, misappropriation, and other abuses contrary to the interests of Sahara.  Julie Ayaad breached these duties by, among other things, failing to properly safeguard the assets of Sahara and distribute Sahara income pro rata to its members.

52.     Julie Ayaad owed Sahara a fiduciary duty not to misappropriate Sahara's assets to herself or her alter ego.  Julie Ayaad breached such duty.

53.     Julie Ayaad owed Sahara a fiduciary duty to take reasonable steps to safeguard the assets of Sahara.  Julie Ayaad breached such duty.

54.     Julie Ayaad owed Sahara a fiduciary duty not to engage in secretive self-dealing.  Julie Ayaad breached such duty.

55.     Julie Ayaad, acting as a member-manager of Sahara, improperly misappropriated the assets, resources, money, and property of Sahara to her own or her alter ego's use and benefit, and in doing so breached her duty of loyalty, duty of care, and fiduciary duty to Sahara.

56.     Julie Ayaad violated her duty to hold as trustee for the Company any property, profit, or benefit derived in the conduct of the Company.  C.R.S. § 7-80-404(1)(a).

57.     Julie Ayaad violated her duty of care in the conduct of the Company, including the duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.  C.R.S. § 7-80-404(2).

EXHIBIT 12 Page 6 of 11

58.     These breaches of duty of loyalty, duty of care, and fiduciary duty owed by Julie Ayaad to Sahara are the direct and proximate cause of damages to Sahara in an amount to be proven at trial.

**Third Claim for Relief**
**(Breach of the Duty of Good Faith – Julie Ayaad)**
**(derivative claim on behalf of Sahara)**

59.     Plaintiff incorporates the above paragraphs herein.

60.     Pursuant to C.R.S. § 7-80-404(3), Julie Ayaad owed Sahara a duty of good faith to perform her duties as a member-manager consistently with the contractual obligation of good faith and fair dealing.

61.     Julie Ayaad, acting as member-manager, improperly misappropriated the assets, resources, money, and property of Sahara to her own or her alter ego's use and benefit, and in doing so breached her duty of good faith to Sahara, to the substantial detriment of the financial interests of Sahara.

62.     These breaches of the duty of good faith by Julie Ayaad to Sahara are the direct and proximate cause of damages to Sahara in an amount to be proven at trial.

**Fourth Claim for Relief**
**(Fraud and Deceit – Julie Ayaad and Osama Ayaad)**
**(derivative claim on behalf of Sahara)**

63.     Plaintiff incorporates the above paragraphs herein.

64.     By virtue of their positions with Sahara, the Ayaads held a special confidential and fiduciary relationship with Sahara, which afforded them the power and means to take undue advantage of Sahara.

65.     The Ayaads deceived Sahara and violated the confidence of Sahara.

66.     As described above, the Ayaads withheld and hid material documents and information, and refused to cooperate with the other members of Sahara, while raiding Sahara of its assets, funds, and other property.

67.     The Ayaads have engaged in a fraudulent scheme to deceive Plaintiff and to capture the assets, money, property, and resources of Sahara for themselves, and have done so all without the knowledge and agreement of Plaintiff.

68.     In concealing the use and applications of the substantial assets, money, property, and resources of Sahara, in fraudulently controlling the books and financial records of Sahara, in denying other members of Sahara access to financial books and records, and in misappropriating

EXHIBIT 12 Page 7 of 11

the earnings, profits, and property of Sahara, the Ayaads have damaged Sahara by the loss of money and property in amounts to be determined at trial.

69.     The Ayaads conduct was attended by circumstances of fraud, willful and wanton disregard for the rights and interests of Sahara, entitling Sahara to exemplary damages pursuant to C.R.S. § 13-21-102(1)(a), which shall be pleaded in an amended complaint following the exchange of initial disclosures, pursuant to statute.

**Fifth Claim for Relief**
**(Civil Conspiracy – Julie Ayaad and Osama Ayaad)**
**(derivative claim on behalf of Sahara)**

70.     Plaintiff incorporates the above paragraphs herein.

71.     Defendants Julie Ayaad and Osama Ayaad each knowingly and willfully conspired and agreed to engage in the scheme to improperly divert money and property belonging to Sahara to themselves.

72.     Defendants committed one or more overt and unlawful acts in furtherance of the conspiracy, including, but not limited to, blocking Mr. Almomani's access to financial books and records, and, upon information and belief, diverting cash receipts and falsifying tax reports.

73.     As a direct result of Defendants' conspiracy, Sahara has suffered damages in an amount to be determined at trial.

74.     Defendants are jointly and severally liable for the losses of Sahara.

**Sixth Claim for Relief**
**(Civil Theft – Julie Ayaad and Osama Ayaad)**
**(derivative claim on behalf of Sahara)**

75.     Plaintiff incorporates the above paragraphs herein.

76.     As described above, by deception, and without authorization, Defendants knowingly obtained, retained, or exercised control over valuable funds and property belonging to Sahara, and diverted such funds and property to themselves.

77.     Defendants received and/or disposed of valuable funds and property belonging to Sahara, knowing or believing such funds and property to have been stolen.

78.     The Ayaads: (1) intended to permanently deprive Sahara of the use or benefit of the valuable funds and property stolen from Sahara; (2) knowingly used, concealed, or abandoned the valuable funds and property stolen from Sahara in such manner as to deprive Sahara of its use or benefit; and (3) used, concealed, or abandoned the valuable funds and

EXHIBIT 12 Page 8 of 11

property stolen from Sahara intending that such use, concealment, or abandonment will deprive Sahara permanently of its use or benefit.

79.     Sahara has been damaged as a proximate result of the civil theft by Defendants.

80.     Sahara has suffered damages from the civil theft herein described and is entitled to "three times the amount of the actual damages sustained," as well as "costs of the action and reasonable attorney fees" pursuant to C.R.S. § 18-4-405.

**Seventh Claim for Relief**
**(Breach of Fiduciary Duty and Duty of Loyalty– Julie Ayaad)**
**(by Plaintiff Safwan Almomani, individually)**

81.     Plaintiff incorporates the above paragraphs herein.

82.     "Partners in a business enterprise owe to one another the highest duty of loyalty; they stand in a relationship of trust and confidence to each other and are bound by standards of good conduct and square dealing." *Hooper v. Yoder*, 737 P.2d 852, 859 (Colo. 1987) (citations omitted). "Each partner has the right to demand and expect from the other a full, fair, open and honest disclosure of everything affecting the relationship." *Id.*

83.     As partners and co-owners of the Sahara business enterprise, Ms. Ayaad owed Mr. Almomani "the highest duty of loyalty, "good conduct," "square dealing," and a "full, fair, open and honest disclosure of everything affecting the relationship." *Id.*   Ms. Ayaad breached these duties by the conduct described in this Complaint, including: stealing from Sahara; diverting property from Sahara; hiding and refusing to disclose the business records of Sahara; failing to protect the assets of Sahara; avoiding communication with Mr. Almomani; and failing to provide the proper pro rata share of Sahara profits to Mr. Almomani.

84.     These breaches of duty of loyalty and fiduciary duty owed by Ms. Ayaad to Mr. Almomani are the direct and proximate cause of damages to Plaintiff in an amount to be proven at trial.

**Eighth Claim for Relief**
**(Breach of Duty of Loyalty– Osama Ayaad)**
**(derivative claim on behalf of Sahara)**

85.     Plaintiff incorporates the above paragraphs herein.

86.     During the term of Mr. Ayaads employment with Sahara, he had and presently has a duty of loyalty to Sahara to act solely for Sahara's benefit in all matters connected with his employment.

EXHIBIT 12 Page 9 of 11

87.     Upon information and belief, Mr. Ayaad breached his duty of loyalty to Sahara by, *inter alia*, stealing money and property from Sahara, falsifying tax reports, refusing to maintain or disclose proper financial records, and failing to safeguard the assets of Sahara.

88.     Mr. Ayaads breach of the duty of loyalty to Sahara is the direct and proximate cause of damages to Sahara in an amount to be proven at trial.

<strong>Prayers for Relief</strong>

WHEREFORE, Plaintiff prays for a judgment against the above-named Defendants, and, as relief, requests:

A.     Compensatory damages;

B.     Judgment in favor of Plaintiffs, Sahara (derivatively) and Safwan Almomani, and against Defendant Julie Ayaad for breach of fiduciary duties in amounts to be proven at trial; and

C.     An Order ordering that the Ayaads, at the Ayaads' expense, provide to Plaintiff a full and complete financial record and accounting of all of Sahara's business and financial records and activities for the period from formation until the present; and

D.     Judgment in Plaintiffs' favor and against Defendants for all actual money damages for the injuries caused by Defendants, including breach of the duty of good faith, and breach of the duty of loyalty, including, without limitation, the amount of money and property misappropriated or diverted, in amounts to be proven after discovery; and

E.     Judgment for all damages incident to Mr. Ayaad's breach of the duty of loyalty as an employee of Sahara, including disgorgement of all compensation paid to Mr. Ayaad during all periods of his disloyalty; and

F.     Judgment for damages for fraud and deceit in amounts to be proven at trial; and

G.     An Order requiring Defendants and their transferees to disgorge all profits and proceeds realized by them in connection with their misappropriations and diversion of Sahara's earnings, profits, and property; and

H.     Treble damages and reasonable attorney fees and costs incident to Defendants' civil theft pursuant to C.R.S. § 18-4-405; and

I.     Exemplary Damages pursuant to C.R.S. § 13-21-102(1)(a); and

J.     Plaintiffs' litigation costs and expenses; and

K.     Reasonable attorney fees; and

L.     Pre-judgment and post-judgment interest on any award of damages to the extent permitted by law; and

M.     Such other and further relief as this court may deem appropriate.

**Plaintiffs demand a trial by jury as to all claims so triable.**

EXHIBIT 12 Page 10 of 11

DATED this 8th day of October, 2020.

TORBET TUFT & MCCONKIE LLC

/s/Bruce M. Rands
*Original signature on file per Rules*
Torbet Tuft & McConkie LLC
Bruce M. Rands, #33391
Attorney for Plaintiffs

Plaintiffs' Address:

Safwan A. Almomani
716 Point of the Pines Drive
Colorado Springs, CO 80919

Sahara Café LLC
954 Manitou Avenue
Manitou Springs, CO 80829

EXHIBIT 12 Page 11 of 11

| | |
|---|---|
| District Court El Paso County, Colorado<br>Court Address: 270 S. Tejon St., Colorado Springs, CO 80903<br><br>Plaintiff:  **SAFWAN ALMOMANI, individually,**<br>    **SAFWAN ALMOMANI, derivatively on behalf of**<br>    **SAHARA CAFÉ, LLC**<br><br>v.<br>Defendant:  **JULIE AYAAD and OSAMA AYAAD** | DATE FILED: December 2, 2020 2:55 PM<br>FILING ID: 4F389AE9562D6<br>CASE NUMBER: 2020CV31825<br><br>**COURT USE ONLY**<br>▲                                    ▲ |
| Attorney:<br>Herman A. Lohse III<br>3578 Hartsel Dr., Unit E, Ste. 391, Colorado Springs, CO 80920<br>Phone Number: 719-635-4840, email: lohsehal@gmail.com<br>Atty. Reg. #: 9067 | Case Number: 20-CV-31825<br><br>Division 7        Courtroom S402 |
| **ANSWER AND COUNTERCLAIM** ||

The Defendants through their Attorney, Answer the COMPLAINT in this case as follows:

1.   Concerning the Plaintiff's paragraph number 1, Defendants (Julie and Osama), deny that Safwan Almomani (Safwan) is a member of Sahara Café, LLC (Sahara). Safwan is a one-half owner of Sahara by a verbal agreement between Safwan, Julie Ayaad, and Osama Ayaad. Julie Ayaad is the only member of Sahara Café, LLC. Attached to this Answer is Exhibit A, which is a copy of the Articles of Organization of Sahara Café, LLC. All of the parties to this action reside in El Paso County, Colorado.

2.   Concerning the Plaintiff's paragraph number 2, Defendants admit the same.

3.    Concerning the Plaintiff's paragraph number 3 Defendants state that Julie Ayaad is the only member of Sahara and she is a co-owner of Sahara with Osama and Safwan.

4.   Concerning the Plaintiff's paragraph number 4, defendants admit that Osama is an employee, a co-owner of Sahara Café, LLC, and the managing partner of Sahara.

5.   Concerning the Plaintiff's paragraph numbers 5 and 6, defendants admit to each.

6.   Concerning the Plaintiff's paragraph number 7, defendants deny that any tortious acts have been committed by the Defendants. Defendants agree that venue is proper in El Paso County.

### ANSWERS TO PLAINTIFFS' GENERAL ALLEGATIONS

7.   Concerning the Plaintiff's paragraphs numbered 8 and 9, defendants admit same.

8.   Concerning the Plaintiff's paragraph number 10, defendants deny same, and state that the only initial and current member is Julie Ayaad (see Defendant's Exhibit A).

9.   Concerning the Plaintiff's paragraph number 11, defendants admit.

EXHIBIT 13 Page 1 of 6

10.     Concerning the Plaintiff's paragraph number 12, defendants deny same, and assert that Safwan first contributed $50,000.00 but was shortly reimbursed for $15,000.00 of that, leaving his initial contribution as $35,000.00. Osama initially contributed $15,000.00 and has always worked as the managing partner, the value of which is at least equal if not exceeds another $20,000.00 which makes his initial contribution equal to Safwan's.

11.     Concerning the Plaintiff's paragraph number 13, defendants agree in part and deny in part. While the building at 954 Manitou Ave., Manitou Springs, Colorado (Building) is currently Titled in the names of Safwan A. Almomani and Jane H. Murphy (attached Exhibit B), the building should really be Titled in the names of, Safwan A. Almomani, Jane H. Murphy, Julie Ayaad, and Osama Ayaad as tenants in common pursuant to the agreement and contract between them dated July 29, 2013, a copy of which is attached as Exhibit C. The property is Leased (a verbal Lease) to Sahara Café, LLC as a restaurant space and Sahara pays rent to Safwan and Osama.

12.     Concerning the Plaintiff's paragraph number 14, the defendants admit to the extent that they agree that both Safwan and Osama contributed $18,000.00 each the buildings' purchase. The balance of the factual allegations in that paragraph are denied.

13.     Concerning the Plaintiff's paragraph number 15, the defendants agree that Osama is an employee and co-owner of Sahara. The reasons the parties agreed to do it that way will come out in the evidence presented at trial. Defendants adamantly state that Safwan is a one half owner of Sahara and Julie and Osama are the other one half owners of Sahara.

14.     Concerning the Plaintiff's paragraph number 16, defendants deny same as it is stated. Only Safwan and Osama have done the accounting for Sahara with Osama managing the day to day operations of the restaurant and occasionally Safwan doing the same.

15.     Concerning the Plaintiff's paragraph number 17, defendants agree in part but and deny in part, adding that Safwan regularly reviews Sahara's finances, supply ordering, cash management, payroll, hiring, and firing of personnel, bookkeeping, tax reporting records and compliance, banking, and regulatory compliance.

16.     Concerning the Plaintiff's paragraphs numbered 18, 19, and 20, the defendants deny the truth of those allegations.

17.     Concerning the Plaintiff's paragraph number 21, the defendants agree that a significant portion of the restaurants' receipts are from cash payments as is so in the Restaurant business in general.

18.     Concerning the Plaintiff's paragraphs number 22, and 23, the defendants deny same.

19.      Concerning the Plaintiff's paragraph number 24, defendants deny the allegations as stated. Safwan did on that occasion alleged in the paragraph take cash out of the restaurant safe. Safwan has always had access and continues to have access to the business' safe code (combination), credit card machine reports, security cameras (when they are working), and financial records.

EXHIBIT 13 Page 2 of 6

20.     Concerning the Plaintiff's paragraphs numbered 25, 26, 27, 28, 29, 30, 31, 32, and 33, the defendants deny the truth of those allegations.

21.     Concerning the Plaintiff's paragraph number 34, the defendants admit same.

22.     Concerning the Plaintiff's paragraphs numbered 35, 36, 37, 38, and 39, the defendants deny same.

23.     Concerning the Plaintiff's paragraph number 40, the defendants deny same and assert that Safwan did ask for an accounting for calendar year 2020 at a meeting with Julie, Safwan, and Osama. After that meeting Safwan began to be provided with documentation on a weekly basis (Tuesdays) which he (Safwan) was to pick up at the restaurant. After three weeks Safwan quit coming in to pick up the documentation requested. After that, Osama began delivering the documentation to Safwan at Safwan's business in Old Colorado City. After some time doing that, Safwan communicated to Osama to stop bringing in the documentation.

24.     Concerning the Plaintiff's paragraph number 41, defendants deny same and assert that Safwan's interest in Sahara and the real property at 954 Manitou Ave., Manitou Springs, Colorado (Building) is exactly one-half and Osama' and Julies' interest is the other one-half. The value of Sahara and the real property at 954 Manitou Ave., Manitou Springs, Colorado (Building) can be easily, competently and professionally be determined by a licensed Business Evaluator (CPA), and a real estate appraiser, with the records needed openly and easily available to each of the parties. Sahara's CPA Tom Murray has information needed for an evaluation,

25.     Concerning the Plaintiff's paragraph number 42 defendants admit same.

26.     Concerning the Plaintiff's paragraph number 43, defendants agree and assert that the same facts apply to the defendants requesting that Sahara file claims in this action against Safwan. Technically, Julie is the only member of Sahara. How can Julie bring a derivative action against herself?

## PLAINTIFF'S CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF

27.     Concerning the Plaintiff's paragraph number 44, it is informational only.

28.     Concerning the Plaintiff's paragraph number 45, defendants agree that Safwan **as a partner** is entitled to an inspection and accounting of the business and financial records of Sahara, but not as a member of Sahara under C.R.S. § 7-80-408, since he is not a Member of Sahara Café, LLC (Exhibit A).

29.     Concerning the Plaintiff's paragraph number 46, defendants agree to the statements in that paragraph concerning "inspection, accounting, tracing, and an accurate evaluation and appraisal" of Sahara, and deny the part that alleges there has been any "mismanagement, fraud, deceit, breach of fiduciary duty, and breach of the duty of good faith" committed by the defendants.

EXHIBIT 13 Page 3 of 6

30.     Concerning the Plaintiff's paragraph number 47, defendants deny same.

31.     Concerning the Plaintiff's paragraphs numbered 48 and 49, defendants deny same.

## SECOND CLAIM FOR RELIEF

32.     Concerning the Plaintiff's paragraphs numbered 50,51, 52, 53, 54, 55, 56, 57, and 58, defendants deny same.

## THIRD CLAIM FOR RELIEF

33.     Concerning the Plaintiff's paragraph number 59, it is only an informational paragraph but Defendants deny same.

34.     Concerning the Plaintiff's paragraphs numbered 60, 61, and 62, defendants deny same as defendants have not breached any of the duties alleged.

## FOURTH CLAIM FOR RELIEF

35.     Concerning the Plaintiff's paragraph number 63, denied as informational only.

36.     Concerning the Plaintiff's paragraphs numbered, 64, 65, 66, 67, 68, and 69, defendants deny same.

## FIFTH CLAIM FOR RELIEF

37.     Concerning the Plaintiff's paragraph number 70, it is only an informational paragraph but Defendants deny same.

38.     Concerning the Plaintiff's paragraphs numbered 71, 72, 73, and 74, defendants deny same.

## SIXTH CLAIM FOR RELIEF

39.     Concerning the Plaintiff's paragraph number 75, it is informational only but still denied.

40.     Concerning the Plaintiff's paragraphs numbered 76, 77, 78, 79, and 80, defendants deny same.

## SEVENTH CLAIM FOR RELIEF

41.     Concerning the Plaintiff's paragraph number 81 denied as informational only.

42.      Concerning the Plaintiff's paragraphs numbered 82, 83, and 84, defendants deny same.

## EIGHTH CLAIM FOR RELIEF

43.      Concerning the Plaintiff's paragraph number 85, denied as informational only.

44.     Concerning the Plaintiff's paragraphs numbered 86, 87, and 88, defendants deny same.

EXHIBIT 13 Page 4 of 6

### DEFENDANT'S COUNTERCLAIM
### BREACH OF CONTRACT
### PLAINTIFF SAFWON ALMOMANI

45.    Safwan A. Almomani and his spouse Jane H. Murphy, in a contract with Julie Ayaad and Osama Ayaad dated July 29, 2013 agreed to deed to "Julie Ayaad and Osama Ayaad 50% ownership of 954 Manitou Ave., Manitou Springs, Colorado at the completion of the mortgage" on 954 Manitou Ave., Manitou Springs, Colorado. The loan on the property was paid off and the Deed of Trust was released on October 19, 2016 (Exhibit D). The property has not been transferred as agreed in the contract even though the terms of the contract have been fulfilled.

46.    The Defendants through Attorney Howard Morrison in a letter dated January 21, 2020 with a proposed Quit Claim Deed enclosed requested that Safwan and his spouse Jane H. Murphy comply with the terms of the Contract and sign and record the Quit Claim Deed. Safwan and Jane H. Murphy failed and or refused to comply. The January 21, 2020 letter.is attached as Exhibit E and the Quit Claim Deed is attached as Exhibit F.

47.    The Plaintiff Safwan and his spouse Jane H. Murphy have breached the contract by their failure and refusal to comply with the terms of the contract.

48.    The court should Order that Safwan A. Almomani and Jane H. Murphy to immediately sign and record the Quit Claim Deed (Exhibit F).

### DEFENDANTS GENERAL STATEMENTS OF FACT

49.    Safwan was always informed as to the status of Sahara. Safwan was always given his share of the profits of Sahara and most of the time those profits were paid in cash to Safwan. Safwan would insist on looking over the reports to be given to CPA Tom Murray. He would make changes to those reports and have Osama take the altered reports and paper work to Tom Murray. If any fraud upon Sahara has been perpetrated by any of the partners Safwan has been guilty of or complicit in it and should be estopped from asserting the same against the other partners.

**THEREFORE**, Defendants request that judgment be entered in their favor and against the Plaintiffs on all eight of Plaintiffs Claims for Relief and in favor of the Defendants on their Counterclaim, and for the following additional relief:

(a)  Dismissal of Safwan Almomani as a Plaintiff derivatively on behalf of SAHARA CAFÉ, LLC and all CLAIMS FOR RELIEF made by him in light of the fact that Safwan Almomani is not a member of Sahara Café, LLC (Exhibit A).

(b)For costs and fees incurred in the defense of the matter and prosecution of the counterclaim(s) as provided by law, and for Attorney's fees as provided by statute, law or contract, and,

(c) any other and further relief as the Court may deem just and or is provided for pursuant to Colorado Law.

EXHIBIT 13 Page 5 of 6

Dated this 2nd day of December 2020.

_____/s/_____
Herman A. Lohse III
Attorney for both Defendants
This document has been electronically filed pursuant to C.R.C.P. 121
§ 1-26. The signed original is on file as the office of Herman A. Lohse III P.C.

## CERTIFICATE OF MAILING/ E-FILING

I certify that a true copy of the above **ANSWER AND COUNTERCLAIM** was either served via

Colorado Courts E-filing system, e-mailed, and/or mailed, postage prepaid, on the 2nd day of December

2020 to the following:

Bruce M. Rands
2 North Cascade Ave., Ste., 320
Colorado Springs, CO 80903
rands@torbetlaw.com

_____/s/_____
Herman A. Lohse III
Attorney for both Defendants
This document has been electronically filed pursuant to C.R.C.P. 121
§ 1-26. The signed original is on file as the office of Herman A. Lohse III P.C.

EXHIBIT 13 Page 6 of 6